## DUCLOSLANGE et al. v. ROSS.

A bequest of land "on the condition that, in case the legatee should die without posterity and without having disposed of the land, it should belong to a third person", creates a *fideicommissum*, prohibited by art. 1507 of the Civil Code.

APPEAL from the Fifth District Court of New Orleans, *Buchanan*, J. *Grivot* and *Roselius*, for the plaintiffs, cited C. C. 1507. 18 La. 23. Toullier, no. 38. *Micou*, for the appellant, relied on *Duplessis v. Kennedy*, 6 La. 232. *Rachal v. Rachal*, 1 Rob. 117. *Liautaud v. Baptiste*, 3 Rob. 441. The judgment of the court was pronounced by

EUSTIS, C. J. The plaintiffs allege that, in 1819, *Baptiste Beaulieu*, a free man of color, made a donation by act *inter vivos*, of a certain lot of ground in this city, to *Eulalie Ducloslange*, their sister, *on the condition that, in case the said Eulalie should die without posterity and without having disposed of said lot, the same should belong to the petitioners and another of their sisters, since deceased*; that said *Eulalie* died without issue of her body, or having disposed of said lot; that a pretended sale, under which the defendant holds and claims the lot, is a mere simulation, and was made under the threats of the husband for the purpose of defrauding the petitioners, during the last illness of the deceased, when she was almost *in extremis* They pray that the said sale be annulled, and that they be decreed to be the owners of the property. The district judge was of opinion that the simulation of the sale to the defendant was established, and that the property must be considered as having belonged to the deceased up to the time of her death. He gave judgment for the plaintiffs, and the defendant appealed.

The district judge was of opinion that the clause in this act of donation, relied upon by the plaintiffs, did not create a substitution under article 1507 of the Code.

Previous to the Code of 1809, substitutions, *fideicommissa*, and entails to a limited extent, formed a part of the laws then in force; but by that Code substitutions and *fideicommissa* were prohibited; and not only were the ordinary terms of prohibition made use of by the legislator, but the article containing it formed part of the chapter entitled : "Of dispositions *reprobated* by law in donations *inter vivos* and *causâ mortis*"— "Des distributions réprouvées par la loi, &c." This chapter contains but two modifications of the prohibition. It provides that what was called in the civil law the vulgar substitution, by which a third person is called to take the gift or legacy in case the donee or legatee does not take it, should not be considered a substitution, and should be valid; and that the disposition *inter vivos*, and *causâ mortis*, by which the usufruct is given to one and the naked property to another, should be received in the same light. Code of 1809, p. 218, art. 43, *et seq.* In the Code of 1825 the chapter is retained, without any material changes. It appears, therefore, that, not only are substitutions in donations *inter vivos* and *causâ mortis* prohibited in the most formal manner, but that the prohibition is equally formal and imperative as to *fideicommissa*.

It is quite possible that the donation under consideration might not be consid- **DUCLOSLANGE**
ered a substitution, according to the doctrine of authors who have discussed the *v.*
subject with reference to the provisions of the Napoléon Code. But the differ-  **Ross.**
ence between the two Codes on this point does not enable us to avail ourselves of
the benefit of their lights in determining on the matter before us. By the Na-
poléon Code, art. 896, substitutions are, in general terms, prohibited, with sev-
eral exceptions, however, which are expressly reserved; but *fideicommissa* are
not prohibited; on the contrary, so far from being abolished, they are main-
tained, and their recognition is considered as resulting from article 967 of that
Code. If the donation creates a *fideicommissum*, the plaintiffs are incapable of
having the benefit of it under article 1507 of our Code. The prohibition of the
Code is so general that no particular class of *fideicommissa* is excepted from it.
That, without the conditions of the donee's not having disposed of the lot and
her dying without posterity, the donation by its terms would create a substitu-
tion, we think, cannot be questioned; and we think it clear that neither of the
contingencies having happened, if that fact have any effect upon the donation,
it is to create a *fideicommissum*, according to the common received definition of
that term in the civil law. Mackeldey, 726, 785, 786. Domat defines a *fidei-
commissum* to be a disposition *causâ mortis*, by which the heir or legatee is re-
quested to give, or to return, a certain thing to another person. Lib. 4, tit. 2, § 2.
Potest quis singulas res per fidei-commissum relinquere, veluti fundum, argen-
tum, hominem, vestem, et pecuniam numeratam; et vel ipsum hæredem
rogare ut alicui restituat, vel legatarium. Inst. lib. 2, tit. 24, De Sing. Reb., per
fideicom. relict. The *charge de rendre*, appears to be the distinctive character-
istic of the *fideicommissum*. 5 Toullier, 28. Conditional *fideicommissa* are
classed by Toullier as one of the principal kinds. Vide also, Institutes of Jus-
tinian, by Ferriere, lib. 2, tit. 23, quœst. 2. That known under the name of *De
eo quod supererit* closely resembles that created by the clause under considera-
tion. The charge was to return, to a third person, what remained of the pro-
perty at the decease of the heir or legatee. The right of the latter to dispose
of the property held under that *fideicommissum* was restricted, and finally
reduced, to fixed limits, by one of the novels of Justinian. Novel ad Senatusc.
Trebellianum. Merlin Rep., *verbo* Substitution fideicommissaire, section 10, § 9.

There is no necessity for explaining the difference between the substitution
and the *fideicommissum*. It is sufficient to state that they are not identical, for
though every substitution is a *fideicommissum*, every *fideicommissum* is by no
means a substitution. Gibbon, in a note to his admirable chapter on the roman
law, adds: "The *substitutions fideicommissaires* of the modern civil law is a
feudal idea grafted on the roman jurisprudence, and bear scarcely any resem-
blance to the ancient *fideicommissa*. Note 154 to chap. 44. Dec. and Fall of
R. E. Both are prohibited by our laws from motives of public policy; and
under that prohibition, we cannot consider the plaintiffs as having any right of
action against the defendant.

The judgment of the District Court is, therefore, reversed, and judgment ren-
dered for the defendant, with costs in both courts.